IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MICHAEL HALDORSON,
Petitioner-Movant

V

UNITED STATES OF AMERICA,
Government- Respondent

FILED
DEC 02 2021 CM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Case: 21-CV-1063
Judge Matthew F. Kennelly

### DEFENDANT HALDORSON'S TRAVERSE/REPLY

Movant Michael Haldorson provides the following Traverse replying to the Government's opposition to his Motion for post-conviction relief:

PROCEDURAL HISTORY/STATEMENT OF FACTS FOR ALL CLAIMS:
   Mr. Haldorson stands on his summary of the trial transcript as well as his recitation of what transpired between him and his attorneys, as well as other facts he offered in support of his 2255 motion. In its Response brief, the Government did not take issue with any of Haldorson's factual recitations or summaries. (see Gov Res., ECF Doc. 19, p.1-7)

Haldorson does take issue with certain emphases of fact, and with the Governments legal arguments and recommended denial of habeas relief.

SUMMARY OF ARGUMENTS PERTAINING TO SPECIFIC GROUNDS FOR RELIEF:
   At the outset, Mr. Haldorson points out that the Government has presented no evidence whatsoever against Haldorson's ineffective-assistance ("IAC") claims, nor any affidavits from any of his previous attorneys. What this means is that the Court should not summarily dispense with any of Haldorson's IAC claims on the grounds that his attorney's decisions, actions and inactions are entitled to any presumption of deference as having been born out of "strategy." The Supreme Court in Strickland and Kimmelman imposed upon defense counsel an obligation to investigate facts and strategies, or make a reasonable determination that investigation was unnecessary. (Kimmelman, 477 US at 385, 106 S.Ct. 2574) Without hearing from Haldorson's attorneys as to what they did, didnt do, and what they were thinking, the Court cannot supplant a finding of "strategy" in their absence on any of those IAC claims.

1. Failure to Consult with experts-
   Haldorson has alleged facts sufficient to warrant the need for testimony from his attorneys. Haldorson showed that his attorneys requested expert assistance, but failed several times to comply with procedural prerequisites for obtaining that assistance despite Haldorson qualifying for it under CJA. (June 13,2016 Tran p.2-11; August 9,2016 Tran. p.10-12, 28-29) Given the complex nature of the case, Haldorson and his attorneys needed assistance from experts in several areas, even if they never testified. Haldorson's attorneys have not been shown by the Government to have independent knowledge of, or expertise in, explosives or cellular forensics. In order to evaluate the Governments claim about "pipe Bombs" and specifically, their allegations regarding the devices in this case and their construction, defense counsel needed to be educated about these devices and cellular data forensics. (The Governments allegations must be contrasted against Haldorson's contention that the devices were clearly designed, built, and intended for deployment as fireworks during the upcoming July 4th 2015 holiday.) Haldorson's trial attorneys reasoning to Haldorson for not consulting an expert was that it came down to experts costing a lot of money. But when Haldorson's family members offered to cash in life insurance policies to pay for it, the reasoning then was that there wasn't enough time to find and retain one before trial, which was then a month away. Limited time and money should never prevent a defendant from being able to obtain experts and having a level playing field with the prosecutions endless resources.

   Currently, Haldorson has been unable to name any experts because he has been confined since his sentencing and has had limited resources. Also, the Covid-19 pandemic has caused his facility to be on lockdown since March 2020 further complicating matters (see Affidavit). Haldorson seeks leave to supplement his IAC claim regarding experts when and if he is appointed counsel.

2. Failure to present witnesses at suppression hearings and at trial-
   Haldorson has alleged facts sufficient to warrant the need for a hearing and seeks to hear testimony from his previous attorneys. Haldorson stands on the summaries of the anticipated testimony that he provided in his motion. The Court will need to hear from defense attorneys in order to resolve any factual disputes, and make a ruling on this claim. [(Note in this regard how the Government suggests "strategies" where the record is devoid of evidence on the topic, like on page 18 of its

1

TRULINCS 48519424 - HALDORSON, MICHAEL P - Unit: PEK-D-A
--------------------------------------------------------------------------------

Response, "Haldorson's attorney was not ineffective for OPTING NOT TO TRY to introduce inadmissible testimony..." (emphasis added)] Its also very presumptuous to assume the testimony would have been inadmissible. But what the Government is doing here is re-casting Haldorson's claims and defenses to be confined within the Government's narrative, then knocking them down with the Government's characterization of the case. While the Government might be well within it's rights to argue that Haldorson's witnesses might not have fit within what the Government believed its case to be, its not the Governments role to define for the court what Haldorson's defense should have been-or not been for that matter. Haldorson's witnesses were indeed all relevant to the defenses, which ought to have been presented. In this regard, it is also not for the Government to presumptuously declare how jurors would have deliberated upon those witnesses. (see Gov. Res. 19) It is similarly telling that the Government is arguing summary disposition to the court without presenting any statements from Haldorson's attorneys, or from any of the witnesses themselves. It is clear that the Government is urging, "Theres nothing to see here, and there's nothing anyone could say that would have ever changed the outcome of this case..." But this is not the appropriate line of rationale to be adopted by a "2255" Court, especially when the Government has brought nothing and no one to bear on the claims raised- and supported- by Mr. Haldorson.

The Government does cite to the correct part of the Strickland decision which applies here, namely "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Gov. Res. at 17, citing Strickland, 466 US at 461. But without affidavits or statements from defense counsel and from the proposed defense witnesses, the Court cannot make a ruling that defense counsel investigated, or instead made a conscious and reasoned decision to skip the investigation. Thus, a hearing is needed.

3. Failure to seek suppression of the June 1, 2015 recording-
Haldorson stands on what he has already briefed with respect to this claim in his motion. He would, however, like to point out a few things. One being that Mrs. Johnson was directed by the Court on 4/21/16 to file her Reply to the Governments Response by 5/5/16. (see ECF Doc.101) She failed to meet that deadline and the Court denied the motion on 6/13/16.(see ECF Doc.133) Mrs. Johnson then filed a Motion for Reconsideration where she references a memo in support of the motion, as well as affidavits in support, being attached. Both of which she then failed to attach.(ECF Doc.153, pg.2 & 3)

The Government asks on page 21 what more Defense Counsel should have done and what more could have been argued in order to prevail on the motion to suppress. Well, Mr. Lipuma was told about these blunders by Mrs. Johnson and was asked to file a motion to suppress. He neglected to do so. In fact, he neglected to research the issue AT ALL before attempting to argue the legalities of it before the Court on NOV 3, 2017. This much is evidenced in the transcripts where when the Court inquired about the legality of the recording and what exceptions are allowed, Defense Counsel essentially told the Court there was no such exemption to the law when, in fact, there is.(ECF Doc.394 Tran pg.45-47) The exemption is found at 720 ILCS 5/14-3(g). Haldorson's attorney should have explained that the exemption that Officers were trying to claim was inapplicable because Insley failed to meet the procedural requirements regarding notification to the Will County States Attorney for oversight. The Government concedes this much on page 1 of their "Motion In Limine to Preclude References to the Violation of the Eavesdropping Law" where they claim it was an innocent mistake.(ECF Doc.301, pg.1) Moreover, the exemption specifically states that even when the requirements ARE followed, that this type of recording is STILL barred from being admissible in ANY court -civil or criminal- unless an officer or person acting at the direction of law enforcement suffers great bodily harm or is killed during the conversation. This type of recording is for the sole purpose of "Officer Safety", and NOT as any part of routine evidence. Also, Defense Counsel argued that officers never sought a "Court Order" for obtaining the recording, however, a plain reading of the statue clearly say's they aren't required to do so.

Haldorson's attorney should have also made the Court aware that, aside from the initial use of the recording device itself on June 1st, 2015 being a violation of 720 ILCS 5/14-2(a)(1) and the unlawful "interception" and "recording" of those conversations being in violation of 720ILCS 5/14-2(a)(3), it was also against state law for Officer Insley to "disclose" the contents of the recording to others- like ATF agents, the Government, and the jury- and to "use" the recording in Haldorson's prosecution. Doing so directly violated 720ILCS 5/14-2(a)(5), and each of those acts is deemed a felony offense in Illinois under 720ILCS 5/14-4. Additionally, the statue specifically outlines at 720ILCS 5/14-5 that any recording captured in violation of the Article is inadmissible as evidence except in the prosecution of a person charged with violating the Statue itself, i.e. in the prosecution of Insley for violating the law. Whatsmore, there are even civil remedies ascribed to injured parties that are outlined by 720ILCS 5/14-6, which Haldorson's attorney should have also made the Court aware of and sought relief under. Its the Movants view that due to the felonies committed by Insley related to the recording, and the civil remedies provided due to the illegality, these things presented a clear bias behind Insley's testimony which Defense Counsel should have sought to explore. Instead, Defense Counsel failed to raise these things in Response to the Government's Motion In Limine, where he could have pointed out the witness' bias related to the felony/civil penalties he had exposure to. It seems that obtaining a conviction in order to avoid the criminal and civil penalties was the root cause of this case being sent federal, because doing so prevents Haldorson from recourse.

Case: 1:21-cv-01063 Document #: 22 Filed: 12/02/21 Page 3 of 9 PageID #:683

TRULINCS 48519424 - HALDORSON, MICHAEL P - Unit: PEK-D-A
--------------------------------------------------------------------------------

Furthermore, knowing that the recording was intercepted and recorded unlawfully, Defense Counsel should have notified the Court that the ongoing "use" of the recording and its contents was against the law. If Counsel had done so, its highly doubtful the Court would have allowed the unlawful recording or its contents to be used and thereby knowingly made itself an accomplice to further violations of state laws.

It speaks volumes that the State has such tight constraints on law enforcement officers use of eavesdropping, to the point where they have enacted laws which limit the use and criminalize abuse by officers. Defense Counsel should have sought to have such a highly prejudicial piece of evidence suppressed since it was the single most important piece of evidence used to obtain a conviction on Count 1. The Governement concedes its import at several points in thier Response, like on page 24 and 28, for example.

Aside from State law, the recording also violates federal Title III wiretap laws because there was only consent obtained to record "in-person" conversations; not phone calls. Here, in this case, officers intercepted and recorded two separate phone calls between Haldorson and the Informant which were then published and played for the jury as Exhibit# 46.( ECF Doc. 384 pg. 663-664) The jury was also given a transcript of the recording to follow along (Exhibit #47), but the transcript the Government used was not the same one they had previously tendered to the Defense and filed onto the record by the Government (ECF Doc. 96-1). Of course, Haldorson surely doesn't need to explain to the Court the significance of switching evidence from a partial transcript during pretrial- likely to conceal the recorded phone calls- to a full transcript with the two phone calls which was used at trial. Even one of the Government witnesses, Todd Smith, noticed this difference while on the stand and remarked that the transcript he was looking at was different from what he previously reviewed. (ECF Doc 385 pg. 865) Haldorson's attorney should have pointed this out and sought to suppress the recording and/or exclude it from evidence. If he had, there's a reasonable likelihood that the outcome of the suppression hearings would have been different, especially because the Court specifically relied up on the recording in its ruling(ECF Doc. 396, pg.5). Its therefore reasonable to assume that the jury also relied upon the recording in their finding of guilt on Count 1, so the outcome there would have been different had the evidence been suppressed.

Haldorson requests a evidentiary hearing on this issue in order to present the Court with the state statues he has cited and hear from attorneys on their actions and inactions regarding this claim of error.

4. Failure to seek suppression of garage search-
Haldorson stands on what he has already briefed with respect to this claim in his motion. But, just to clarify one thing in particular, in the Governments Response at page 4 they point to motions to suppress that were filed by one of Haldorson's attorneys. Those motions were mainly based on fruit of the poisonous tree stemming from an unlawful arrest, and my current IAC claim is based on the fact that defense counsel should have sought suppression and attacked the actual search warrant affidavit and constitutionality of the search. Two completely different things.

Also, Haldorson was prejudiced by the garage photos, PVC pipes, and cans of powders that were used as evidence to obtain conviction on Count 4.

Lastly, the Government complains that Haldorson has provided no evidence that the storage garage where Haldorson stored his belongings is within a gated complex. (Gov Br. p.26) Well, the fencing is about 15-20 ft from the garage and it is approximately 8-10 feet tall. It can be seen when entering the apartment complex. This can be shown to be true if an evidentiary hearing is granted on the issue.(see affidavit)

TRULINCS 48519424 - HALDORSON, MICHAEL P - Unit: PEK-D-A

---

5. Failure to seek suppression of cell phone search-
Haldorson stands on what he has already briefed on this in his motion.

6. Failure to Impeach officers-
Haldorson's stands on what he has already briefed on this claim in his motion. However, Haldorson would like to point out to the Court that trial counsels closing argument- relied upon by the Government on page 32 of its Response- did not suffice for evidence about Insley, and itself was not evidence. Attorneys opening and closing arguments never are.

Further, Movant would like to point out that the Government's stance on Haldorson's defense counsel has apparently changed. Previously, in the Governments Reply brief on Haldorson's Direct Appeal(18-2279), the Government argued that defense counsel failed in his duties by not seeking to reopen the hearings on suppression motions to obtain additional witness testimony from Insley on his false statements.(ECF appeal Doc. 29 pg.26). Of course, Haldorson's attorney's defense to this suggestion was to blame the Court for his mistake by not allowing him more time, though, he never actually asked for more time for such a motion. (ECF appeal Doc. 36 pg.3) Now, conveniently, the Government is claiming that Haldorson's attorney's performed effectively and did everything they could have done.

Similarly, the Government also seems to have changed their position on Officer Insley. They consistently defended Officer Insley and his actions previously throughout the entirety of the case, claiming that Insleys mistakes in the investigation were innocent and that, while "clumsy", they were "not nefarious". (ECF Doc.394 pg.109 & 115) But now, here in the Government's Response, they concede that Officer Insley and his actions were successfully impeached by defense counsel, while also complaining that anything further would be merely "cumulative and repetitive".(Gov Br. 32-33). However, Movant argues that such a long list of "mistakes" at some point establishes a pattern, especially when shown to NOT be so "innocent", which should have tipped the scales to prove misconduct. And it was close. After all, the Court clearly was on the fence about whether Insley's actions were nefarious or not. This is reflected at the beginning of the Courts ruling on suppression motions where the Court stated: "The line between sloppiness on the one hand and misconduct on the other is not always bright and clear". (ECF Doc.396 pg.3) So it appears the Court was somewhat compelled by things the defense pointed out, but it was just not completely convinced and ended up giving Officer Insley the benefit of the doubt. Probably because some of Insley's excuses were plausible.

Like on Insley's switching of the CI number, for example, which the Court ended up accepting as being a "typo". (ECF Doc.395 pg.6) If Defense counsel had investigated the case, he would have discovered the same documents discovered via FOIA and provided as exhibits, and would have been prepared to fully refute Insley's excuse to conclusively show- with actual supporting physical evidence- that it was not a "typo", and that Insley's actions were nefarious. The documents would have turned defense counsel's speculations of misconduct into fully supported arguments with a higher degree of certainty by dissolving the innocence behind the excuse. This likely would have then been persuasive enough to prevail on the motions to suppress. Without those documents, Insley's "typo" excuse is understandable and easily plausible. However, WITH the documents, defense counsel could have done two things: (1) refuted the claim that both reports with both CI numbers were given to the states attorney, and (2) shown that this alleged "mistake" is something that Insley has suspiciously done on other cases. This would have helped to defeat the innocent mistake excuse.

Further, Defense counsel should have then explained the reasoning behind someone switching the CI number on certain reports/documents/warrant applications, and pointed out that: (1) it prevents Judges who are issuing warrants from being able to properly make credibility determinations based on the correct person; (2) prevents defense attorney's from being able to meaningfully test the evidence and examine the veracity of witnesses; and (3) prevents Defendant's from receiving a fair trial. Insley was playing hide-the-ball from the Court and seeking to pull the wool over the eyes of others in his attempt to conceal the misconduct of his informant, as well as Insley's mishandling of his informant from being exposed. This begs the question that if Insley was so brazen as to try to deceive a Defendant and the Court, then what other things has he done that HAVEN'T been discovered?

Likewise, with the backdating of a report; it could have been a honest mistake. But that's less likely when its discovered that Insley also backdated other reports. Once is plausible, but anything more becomes suspicious. One would expect that when a particular event occurs in a criminal investigation it's immediately memorialized in a report -or done so soon thereafter- while memories and details are still fresh. Not doing so- especially where other misconduct is suspected- has some suspicious implications. Defense Counsel should have pointed this out and explained what significance backdating reports can have in

criminal investigations where the events and details exactly as they occurred are most important. A dishonest or deceitful officer might hold off on writing reports so that they aren't immediately locked into any particular narrative right away. This provides them with the capability to alter details to better suit themselves and their narrative of events later while giving the appearance of being written contemporaneously to the events, which lends a sense of credibility to the story. And the fact that NOT ONE other officer wrote a report about the night of June 1st, 2015- despite claims of being there, which can been shown to be a false assertion in regards to Officer Diehl - only further aids Officer Insley with his ability to change details down the road because it prevents any inconsistencies from being discovered and fabricates witnesses to the event. After all, its easy to claim you predicted the details of an event when your "prediction" is made AFTER the event. And your story seems more credible when you falsely testify that there were witnesses there who actually weren't.

    The Government claims there was no evidence to support the contention that Insley committed perjury, but the Movant has given several examples. One of the most clearly visible examples reflected in the record is one that Movant points out in his Motion, where Insley claimed on more than one occasion that Officer Diehl was there on June 1st, 2015 doing surveillance, when in fact Diehl had not even been hired until almost a month later.(Movant's Br. pg.102) Yet, Defense Counsel also failed to object to this false testimony several times, and failed to impeach officers on this obvious lie.

    Aside from just Officer Insley, there were also several other officers pointed out in Movant's motion whom defense counsel failed to impeach which the Government has ignored. Those being Officers Marzetta and Ladd (Movant Br. pg.123) as well as Agents Gallagher and Dziedzic, to name a few. (Movant Br. pg.98-99) So it was more than just one lowly officer telling a few harmless white lies that were immaterial to the facts, as the Government suggests.

    Accordingly, an evidentiary hearing is needed on this issue so that the Court can hear form trial counsel. Beforehand, Haldorson wishes to work with appointed counsel to collect and present the evidence identified in this claim.

7. Failure to properly advise on the right to testify-
    Haldorson stands on what he has already briefed with respect to his claim in his motion. The record made during trial on this issue is insufficient, as it would have been inappropriate for the Court to inquire specifically about discussions had between attorney and client, in the middle of an adversarial preceding, in front of Haldorson's opponent. The proper forum/venue for the airing of these matters, communications and advice, is an evidentiary hearing. (The Governments speculation and opinion should not serve to dispense with this claim, as manifested on page 37 of its Response, with the uninformed and unsupported phrase, "Haldorson's attorney was wise to advise him not to testify".)

8. State Court versus Federal court-
Haldorson stands on what he has already briefed with respect to this claim in his motion. To avoid repeating arguments, much of the argument in Movant's claim #3 (and also enumerated in this Traverse as #3) fully supports this claim, specifically with respect to the illegality of the recording.

9. Double Jeopardy-
Haldorson stands on what he has already briefed with respect to this claim in his motion.

10. Failure to object/ Confrontation Clause-
    Haldorson stands on what he has already briefed with respect to this claim in his motion. Both those statements that were introduced through Officer Insley's testimony and those introduced through the June 1st, 2015 recording violated the Confrontation Clause and objections should have been made. The provision of a jury instruction does not purge the taint of a constitutional violation. A jury instruction AFTER the officers testimony and informants recording being played is not the same as the prohibition of the testimony that would have been ordered had trial counsel made the appropriate and timely objection. The fact that the jury was instructed to limit its consideration of the Informants recording does not cure the wrong that was done to Haldorson when he was not allowed to confront the Informant about those matters that the jury was allowed to consider, per the instruction that was given. The instruction also did not alleviate defense counsel of his obligation to defend Haldorson's right to confront the witness statements against him and to protect the record. Lastly, it is not for the Government to speculate as to whether or not Haldorson's attorney investigated any issues, or acted competently, as there is nothing in the record to suggest reasonable investigations were undertaken before an overall trial strategy of inaction. So, the Court is left with no record from defense counsel or the witness to contradict and/or summarily dismiss Haldorson's IAC claim and a hearing on the issue is needed.

11. Lack of a valid search warrant for computers-
    Haldorson stands on what has been briefed with respect to this claim in his motion. However, it appears the Government has misapprehended the grounds for my claim, which is that there was no legal authority for officers to take the computers from the apartment to begin with. The apartment search warrant did not authorize any electronics to be seized from the apartment-

contrary to the false testimony of Officers Ladd and Marzetta which defense counsel failed to object to. The crux of the argument is that in order for law enforcement to have a valid warrant to search the contents within the computers, they needed to come into possession of the computers lawfully, which they had not. And defense counsel would have known this had an investigation of the case and docket filings been conducted, wherein the apartment search warrant should have been used to contradict Officers Ladd and Marzetta's testimony's, and/or objection could have been lodged against their false statements.

12. Cumulative error/ prejudice-

Haldorson stands on what he has already briefed with respect to his claim in his motion. Haldorson need not restate each argument from his motion redundantly in the cumulative error or prejudice section. Two or more errors or examples of deficient performance under STRICKLAND which are found by the Court are sufficient to invoke this analysis. [Note that there is a circuit split on this issue. "Cumulative prejudice" is a concept which is currently in need of commentary and resolution by the Supreme Court. The First, Second, Third, Fifth, Sixth, Seventh, Ninth and Tenth circuits all allow for "Cumulative prejudice" review of multiple Strickland claims. The Fourth and Eighth Circuits reject "cumulative prejudice". Whether the Seventh Circuits approach survives is an issue which Haldorson wishes to preserve here. See Brian R. Means, Cumulative Error, Federal Habeas Manual, section 13.4(may 2019) Citation Omitted); see also, Goodman v. Bertrand, 467 F.3d 1022, 1029-1030 (7th Cir 2006) (cumulative prejudice in "2254" litigation).]

Because the Seventh Circuit pays heed to this concept, and because Haldorson has alleged facts sufficient to warrant the need for testimony from his attorneys, Haldorson believes that this aspect of his motion underscores the need for an evidentiary hearing on these issues.

Respectfully submitted,

*Michael Haldorson*
Michael Haldorson #48519-424
Pekin FCI
PO Box 5000
Pekin, ill. 61555

REQUEST FOR AN EVIDENTIARY HEARING

Movant Haldorson respectfully requests that this Court appoint him an attorney to appear and argue the facts and the law contained in this brief, and to present any additional evidence which may clarify any questions of fact or law which this Court may have after reading this Petition, and/or the Government's Response, and/or the Movant's Traverse.

*Michael Haldorson*
Michael Haldorson #48519-424

CERTIFICATE OF SERVICE

Movant Haldorson certifies that he mailed a copy of the above and foregoing Traverse on this 29 day of November, 2021, by first class postage paid, to AUSA Madeline Murphy, 219 South Dearborn, 5th Floor, Chicago, ill. 60604.

*Michael Haldorson*
Michael Haldorson #48519-424

TRULINCS 48519424 - HALDORSON, MICHAEL P - Unit: PEK-D-A

---

FROM: 48519424
TO:
SUBJECT: AFFIDAVIT OF MICHAEL HALDORSON
DATE: 11/26/2021 05:10:03 PM

I, Michael Haldorson, the affiant, being duly sworn upon oath, depose and state the following to be true under penalty of perjury.

I am currently incarcerated and being housed at Pekin FCI. I have been here since July 2018.

EXPERTS(issue #1):
Since my conviction I have been confined to the BOP at Pekin FCI. My facility went onto lockdown in March of 2020 due to Covid-19 pandemic and has been been on lockdown ever since. It has been a truly extraordinary situation.

From March 2020 all the way to January 2021 the conditions here were VERY harsh, mentally and physically. Our movement out of our cells and access to resources was at times for months on end completely non-existent, and at other times severely limited. This includes the limiting of time out of our cells to 30 mins every 3 days to use showers and one 10-min phonecall home. Our access to library resources was initially prohibited for several months, then eventually allowed but limited to 2 hours every 7 days -that is, when it wasn't canceled altogether- where we then had to compete with others vying for the same few resources and often didn't have enough time to use resources due to long lines which caused literal fighting over phones/computers. We were also not allowed any personal or professional visits. This means my opportunity to confer with outsiders, personally or professionally for the purpose of hiring an expert, was essentially non-existent. Also, I could not find an expert on my own because our law library contains absolutely NO expert witness directories or magazines in which experts advertise. Therefore I'm requesting appointment of counsel and a 90-day window for him/her to seek, interview and retain an expert for my requested evidentiary hearing. Alternatively, I would request an Order from the Court directing my facility to allow me unfettered internet and phone access-without calls being recorded- for at least 120 minutes each week for 12 weeks, for the purpose of seeking and interviewing experts. Thereafter, I can submit a letter to the Court identifying experts and asking for CJA compensation to be paid to those experts for services.

GARAGE(issue #4):
The storage garage in Crest Hill, Illinois that was searched by officers is on private property within a gated apartment complex. There are signs posted saying so. The complex is surrounded with iron-rod fencing that's approximately 8-10 feet tall which separates the property from the surrounding homes and businesses. The fencing can be seen when entering the complex. It can also be seen about 15-20 feet from the garages that officers searched.

I, Michael Haldorson, the affiant, being duly sworn, depose and state the above to be true under the penalty for perjury.

_Michael Haldorson_ 11/29/21
Michael Haldorson #48519-424    Date

_____  _____
Notary Public                    Date

SEAL:

NOTE: I COULD NOT GET THIS AFFIDAVIT NOTORIZED DUE TO ADMINISTRATIVE MATTERS BEYOND MY CONTROL. THEREFORE I AM SUBMITTING THIS PURSUANT TO 28 USC 1746. I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT.

EXECUTED ON NOVEMBER 29, 2021.

_Michael Haldorson_

⇔48519-424⇔

Michael Haldorson
ID # 48519424
Federal Correctional Institution
PO BOX 5000
Pekin, IL 61555-5000
United States

7017 0530 0000 4527 9862

**CERTIFIED MAIL**®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

2021 DEC -1 PM 8:47

RECEIVED
NOV 29 2021

LEGAL MAIL FCI PEKIN MAIL ROOM

CASE # 21-cv-1063

⇔48519-424⇔

Clerks Office
219 S Dearborn ST
Prisoner Correspondence
Chicago, IL 60604
United States






The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence to, forwarding to another addressee, please return the enclosure to the above address.

Mail Room
Federal Correctional Institution
P. O. Box 7000
Pekin, IL 61555-7000



12/02/2021-6